UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SCOTT JOLLEY,
    *Plaintiff*,

v.

No. 3:19-cv-0174 (JAM)

ANDREW SAUL,
    *Defendant*.

**ORDER GRANTING MOTION TO AFFIRM THE
DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Scott Jolley claims that he is disabled and unable to work owing primarily to the after-effects of strokes. He has brought this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security, who denied his claim for Title II social security disability insurance and Title XVI supplemental security income. Jolley has filed a motion to reverse the decision of the Commissioner, Doc. #13, and the Commissioner has filed a motion to affirm his judgment, Doc. #15.[1] For the reasons discussed below, I will grant the Commissioner's motion to affirm.

## BACKGROUND

The following facts are taken from plaintiff Scott Jolley's largely uncontested statement of material facts. Doc. #13-2. At age 16, Jolley was badly injured in a motor vehicle accident that shattered one side of his face, leaving him in a coma for almost a month and requiring a hospital stay of more than three months. *Id*. at 1 (¶ 2). During his early adulthood, Jolly worked in a series of medium-skill jobs like hand grinder, machine operator, and sawmill worker, earning a modest living to support his wife and son. *Id*. at 2 (¶¶ 3, 5).

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Clerk of Court shall substitute the Commissioner of Social Security Andrew M. Saul as the defendant in place of Acting Commissioner Nancy A. Berryhill who was initially named as the defendant.

1

Although the disability onset date in this proceeding is January 4, 2016, Doc. #12 at 16 (Tr. 12), Jolley's health began to deteriorate in the early 2010s. He reported abdominal pain in 2013, sleep apnea in 2014, and facial swelling in 2015, Doc. #13-2 at 2 (¶¶ 7-9), but the serious problems began in 2015, when he presented to the emergency department with a "transient ischemic attack," *i.e.*, a stroke. *Id*. at 3 (¶ 10). Several more strokes followed, and by late 2016 a consulting psychologist determined Jolley had a borderline IQ of 77 with considerable difficulties in processing visual images. *Id*. at 7-8 (¶¶ 32-33). In 2017, speech therapy revealed similar difficulties with recalling details in sentences and recalling word lists. *Id*. at 8 (¶ 38). But in April 2017, Jolley stopped all medical treatments; he was uninsured and he claims his medical providers would not see him "because I owed $85," *id*. at 2 (¶ 4).

I now turn to transcripts provided by the Commissioner. Doc. #12.[2] Jolley filed an application for Title II disability insurance and disability benefits on July 7, 2016; he also filed an application for supplemental security income on July 14, 2016. He initially claimed a disability onset date of January 1, 2013, but he amended it at the administrative law judge ("ALJ") hearing (without objection) to January 1, 2016. Doc. #12 at 16 (Tr. 12). Jolley's claim was initially denied on December 2, 2016, and denied again upon reconsideration on May 31, 2017. *Ibid*. He then timely filed a written request for a hearing by an ALJ on May 31, 2017. *Ibid*.

Jolley appeared with counsel and testified at a hearing in Hartford before ALJ John Molleur on February 26, 2018. *Ibid*. Vocational expert Edmond Calandra testified by phone. *Ibid.* On March 8, 2018, the ALJ issued a decision concluding that Jolley was not disabled within the meaning of the Social Security Act. *Ibid*. The Appeals Council denied Jolley's request for

---

[2] Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. ##).

review on January 16, 2019. *Id.* at 5 (Tr. 1). Jolley then filed this federal court action on February 5, 2019. Doc. #1.

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [claimant] [is] able to meet with his physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(a)-(b), 416.966(a)-(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

The agency engages in the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or his past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a particular step, the ALJ may make a decision without proceeding to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts at Step Five to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

After proceeding through all five steps, the ALJ concluded that Jolley was not disabled within the meaning of the Social Security Act. At Step One, the ALJ determined that Jolley had not engaged in substantial gainful activity since January 4, 2016, the amended onset date. Doc. #12 at 19 (Tr. 14).

At Step Two, the ALJ concluded that Jolley suffered from the following severe impairments: status post cerebrovascular accident, status post remote motor vehicle accident with cranial hardware placement, asthma, neurocognitive disorder, and unspecified depressive disorder. *Ibid.* The ALJ further determined that Jolley had additional medically determinable non-severe impairments: status post remote toe fracture, carotid artery stenosis (not hemodynamically significant), and obstructive sleep apnea. *Ibid*.

At Step Three, the ALJ determined that Jolley did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Ibid.* The ALJ then found that Jolley had a residual functional capacity ("RFC") to perform light work defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he must avoid climbing ladders and ropes and work at unprotected

4

heights; he was limited to only frequently performing other postural activities, as well as handling and fingering with both hands; and he could have no more than occasional exposure to dusts, fumes, gases, or other noxious irritants. The ALJ further limited Jolley's RFC: he was not to interact with the general public; perform no tandem or team-oriented work; interact with coworkers and supervisors only occasionally; and perform only basic two- and three-step tasks with no more than occasional and basic decision-making or changes in the work setting. *Id*. at 22-26 (Tr. 18-22).

At Step Four, the ALJ concluded that Jolley was unable to perform any past relevant work through the date last insured. *Id.* at 23 (Tr. 19). At Step Five, the ALJ relied on the testimony of a vocational expert who opined that a person of Jolley's age (51), education (Grade 10), work background, and residual functional capacity could perform the requirements of a mail clerk, assembler, and solderer, positions which combined represented somewhat more than one million jobs in the national economy. *Id*. at 28 (Tr. 24). The ALJ ultimately held that Jolley was not disabled within the meaning of the Social Security Act since January 4, 2016. *Id.* at 28-29 (Tr. 24-25).

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(1) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is

5

supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

Jolley makes two claims of error. First, Jolley claims the ALJ failed to develop the record by not acquiring medical opinions from Jolley's treating physicians and not seeking out medical evidence for the period between April 19, 2017, and March 8, 2018 (the date of the ALJ's decision). Doc. #13-1 at 1. Second, Jolley claims the ALJ's determination that he could perform light work was not supported by substantial evidence, and that the RFC was unsupported by substantial evidence insofar as it did not incorporate his breathing difficulties or declining cognitive state. *Ibid*.

### *Failure to develop the record*

It is well established that "[t]he ALJ, unlike a judge in a trial, must [himself] affirmatively develop the record" in light of "the essentially non-adversarial nature of a benefits proceeding." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ has a duty "to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). But the duty to develop the record is not limitless. An ALJ has no duty to develop a history outside the relevant period unless there are "obvious gaps or inconsistencies" in the record. *See O'Connell v. Colvin*, 558 Fed. App'x 63, 64 (2d Cir. 2014) (citing *Rosa*, 168 F.3d at 79 n. 5).

The latest medical record concerning Jolley's disability appears to have been generated in April 2017, Doc. #12 at 583 (Tr. 579), while the last medical evaluation of Jolley included in the transcripts provided by the Commissioner is the state benefits evaluation, dated May 2017, *id*. at

6

114 (Tr. 110). There seems to have been no evaluation of Jolley's mental or physical health between May 2017 and the hearing in February 2018 or the ALJ's decision the following month.

Jolley claims the ALJ did not adequately develop the record in two ways.[3] First, Jolley appears to argue that the ALJ should have secured additional "medical evidence" for the period April 2017 to March 2018. Doc. #13-1 at 4. Second, Jolley notes that the record does not contain opinions from his treating sources, and he argues that the ALJ was obliged to secure these opinions. Doc. #13-1 at 4-5.

Jolley's first objection is easily addressed. There is no medical evidence of Jolley's condition for the period April 2017 to March 2018 because Jolley did not receive medical care during that period. Jolley concedes as much. *See* Doc. #13-2 at 9 (¶ 42) (statement of undisputed facts, explaining that after April 2017 "the plaintiff did not receive further medical treatment or therapy" owing to "impecunious circumstances"). There is certainly a gap in Jolley's treatment for that period, but there is no "gap" in the "record," in the sense of treatment or medical records that could have been presented before the ALJ and were not. *See Rosa*, 168 F.3d at 79 n. 5 ("where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information"); *contrast, e.g.*, *Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir. 1990) (ALJ failed to develop record when "the ALJ only asked at which hospital Cruz had been treated, and

---

[3] The Commissioner argues that because Jolley's attorney responded in the affirmative to the ALJ's question of whether the "file [was] complete," and stated "the record is complete with everything that we have on this file," Jolley has essentially forfeited any attack on the completeness of the record. Doc. #15-1 at 5-6. "It would be improper," the Commissioner argues, "to let a claimant stipulate that the record is complete, and then obtain remand by challenging it on the same basis." *Ibid*. But it is clear that in context, quoted statements from Jolley's counsel referred to the completeness of the record at the hearing versus the record that had been prepared for the benefits application, and not the question presented here of whether the record needed to be enlarged with materials that had never been gathered in the first place. *See* Doc. #12 at 48-49 (Tr. 44-45). Even if counsel had made more unequivocal statements, "it is the rule in our circuit that the ALJ, unlike a judge in a trial, must affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding, even if the claimant is represented by counsel." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (cleaned up); *see generally DeMico v. Berryhill*, 2018 WL 2254544, at *7-8 (D. Conn. 2018) (collecting cases).

7

yet did not seek to obtain those hospital records"). The ALJ's duty to develop the record does not extend to procuring medical records that do not exist for treatment that never occurred.

Jolley's second objection, that the ALJ erred in failing to adduce medical source statements, requires more discussion. Between September 2013 and March 2017, the Social Security Administration's regulations provided that the Commissioner "will request a medical source statement about what you can still do despite your impairment(s)" from a claimant's treating physicians. *See* 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6) (effective Sept. 2013 to March 2017).[4] It is uncontested that there are no medical source statements of this kind in the record. Jolley argues that this failure to obtain a medical source statement requires remand. *See, e.g.*, *Hallet v. Astrue*, 2012 WL 4371241, at *6 (D. Conn. 2012) (concluding that "[b]ecause the expert opinions of a treating physician as to the existence of a disability are binding on the factfinder, it is not sufficient for the ALJ simply to secure raw data from the treating physician" and remanding for further development of the record); *see generally Cortes v. Berryhill*, 2018 WL 1392903, at *5 (D. Conn. 2018) (collecting cases).

It is true that the pre-2017 regulation, which applies to this case, "seems to impose on the ALJ a duty to solicit such medical opinions." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013). But that duty is not absolute, and a "remand is not always required when an

---

[4] The Commissioner argues that these regulations do not apply to this case, because the Commissioner amended the regulations in March 2017 to specifically remove these provisions and free the ALJ from the obligation of securing medical source statements. Doc. #15-1 at 7; *see Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844, 5864-65 (Jan. 18, 2017). But the revised regulation states that its changes to the rules became effective March 27, 2017; Jolley's claims were filed in July 2016. The Commissioner argues that these regulations applied even to claims filed before March 2017 so long as the ALJ rendered his decision after the effective date (as happened here). Doc. #15-1 at 8. I do not agree. The Second Circuit has explained that "the new regulations [cited above] apply only to *claims* filed on or after March 27, 2017," *Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30 n. 1 (2d Cir. 2018) (emphasis added); *see also Robinson v. Saul*, 2020 WL 652515, at *9 n. 9 (D. Conn. 2020); *White v. Berryhill*, 2018 WL 2926284, at *2 n. 4 (D. Conn. 2018)

ALJ fails in his duty to request opinions, particularly where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Id*. at 34.

This is such a case. The record contains many evaluation notes from Jolley's treating physicians, covering a period far broader than the one year prior to the disability onset date, as is required by the regulations, *see* 20 C.F.R. §§ 404.1512(b), 416.912(b), from which Jolley's ability to function might be inferred.[5] The ALJ also made appropriate use of consulting physicians, including Drs. Kogan and Cosentino, whose opinions directly supported the ALJ's findings of fact. *See* Doc. #12 at 528-31 (Tr. 524-27) (opinion of Dr. Kogan); *id.* at 523-27 (Tr. 519-23) (opinion of Dr. Cosentino). Indeed, for a case like this where the medical sources did not provide specific opinions, the regulations expressly provide for consultative examinations to fill the evaluation gap, as was done here. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (concluding an ALJ was not under an obligation to further develop the record where the record contained a partially relied-upon opinion from a consultative examiner and the treatment notes from the plaintiff's doctors); 20 C.F.R. §§ 404.1517, 416.917.

This case does not bear much resemblance to *Guillen v. Berryhill*, 697 F. App'x 107 (2d Cir. 2017), where the Second Circuit remanded for further development of the record and the procurement of treating source statements. There, "the medical records obtained by the ALJ do not shed any light on [the claimant's] residual functional capacity, and the consulting doctors did not personally evaluate [the claimant]." *Id*. at 108-09. Here, the medical records do shed

---

[5] *See* Doc. #12 at 484 (Tr. 480) (evaluation of Dr. Wilcon describing stroke and aphasia); *id*. at 507-19 (Tr. 503-15) (collection of sleep study evaluations conducted by Dr. Subakeesan); *id*. at 533 (Tr. 529) (same); *id*. at 543 (Tr. 539) (evaluation of neurologist Dr. Pomorska describing expressive aphasia); *id*. at 565-83 (Tr. 561-79) (evaluations of speech language pathologist Ms. Siedzik describing results on various speech tests); *id*. at 588-89 (Tr. 584-85) (same, somewhat longer initial evaluation).

sufficient light on Jolley's RFC and, appropriately, both consulting examiners conducted in-person examinations of Jolley.

Although Jolley suggested at oral argument that the reports of Dr. Kogan and Dr. Cosentino—dated 2016—had fallen out of date, the question the ALJ was attempting to answer was whether Jolley was disabled as of his disability onset date of January 2016. By 2017, the treating physicians would have been able to offer only retrospective evaluations from treatment during years prior, statements of relatively limited value. *See Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (retrospective medical assessments from treating sources not required when there was no evidence that they would have revealed useful information beyond that provided by consulting examiners and complete medical history). All in all, I conclude that the ALJ did not breach his duty to develop the record.

### *Substantial evidence for the RFC*

Jolley next argues that substantial evidence does not support the ALJ's determination of his RFC in two respects. First, Jolley argues that the ALJ's finding that Jolley could generally work at the light exertional level as defined by 20 C.F.R. § 404.1567 (albeit with various nonexertional limitations) was not supported by the record. Second, Jolley argues that substantial evidence only supports mental limitations considerably more stringent than those the ALJ found. *See* Doc. #13-1 at 5-9 (Jolley brief).

I will address the light work finding first. Jolley argues that "the evidence does not support a finding that Jolley is capable of a good deal of walking or standing," Doc. #13-1 at 6, which is part of light work as defined in the regulations, 20 C.F.R. §§ 404.1567(b), 416.967(b). His sole basis for that argument—other than pointing to the alleged incompleteness of the record, which I have addressed above—is that consulting physician Dr. Kogan did not perform tests that

would have further developed limitations created by Jolley's dyspnea. Doc. #13-1 at 7. This, he argues, renders the RFC of light work unsupported by substantial evidence.

I do not agree for substantially the reasons advanced by the Commissioner. Doc. #15 at 9. Dr. Kogan's opinion, based on an in-person examination, took careful account of Jolley's shortness of breath, Doc. #12 at 529 (Tr. 525), and nonetheless concluded that activities including "standing [and] walking" were only "mildly limited due to generalized joint pain," *id*. at 531 (Tr. 527). Likewise, the ALJ's opinion carefully reviewed both the entire medical record and the opinion of Dr. Kogan, as well as the consistent opinions of the state agency medical examiners, in concluding that Jolley could engage in frequent standing or walking. *See id*. at 24 (Tr. 20). Of course, further tests might have revealed disability, but it was equally likely— indeed, much more likely, given the existing medical evidence—that they might not have. It cannot be said that this conclusion was unsupported by substantial evidence.

Turning to Jolley's argument based on his mental impairments, here too the ALJ took careful account of the consultative examiners and the medical record evidence—including the extended narrative reports of the treating speech pathologist, *see id*. at 565-89 (Tr. 561-85)—in fashioning the non-exertional limitations applicable to Jolley's case: basic two to three-step tasks only, no work with teams or coworkers (or the public), only occasional interactions with supervisors, and no more than occasional or basic decision-making or departures from work routine, *see* Doc. #12 at 22 (Tr. 18). The ALJ's analysis accorded with the requirements of Social Security Ruling 85-16, setting out the ALJ's views on limits on Jolley's work-related activities derived from his decline in mental functioning. *See Titles II & XVI: Residual Functional Capacity for Mental Impairments*, SSR 85-16, 1985 WL 56855 (S.S.A. 1985). And I agree with

the Commissioner that the ALJ's determinations here were supported by substantial evidence. Doc. #15 at 10-11.

Even if the ALJ's drawing of a negative inference from the failure to seek additional treatment or complete speech pathology exercises was error, *see* Doc. #13-1 at 4, there is at best equivocal evidence in the record supporting the claim that Jolley's mental conditions would cause him to be off-task for 66 minutes per day or would require him to be retrained or redirected in basic tasks (the two limitations the vocational expert indicated would lead to no employment, *see* Doc. #12 at 61 (Tr. 59)). "If the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). Here, although the available evidence might have been open to the interpretation that Jolley had more significant limitations than the ALJ found, substantial evidence supports the ALJ's conclusion otherwise.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion to affirm, Doc. #15, is GRANTED, and Plaintiff's motion to reverse, Doc. #13, is DENIED. The Clerk of Court shall close this case.

Dated at New Haven this 30th day of March 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge